Case 5:24-cv-00009-JHY-JCH    Document 28    Filed 06/05/25    Page 1 of 15
Pageid#: 333

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
June 05, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CM-Focus LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 5:24-cv-00009 |
| Conviso, Inc., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This matter is before the court on a motion to dismiss filed by Defendant Conviso, Inc. ("Conviso") (Dkt. 20). For the reasons outlined below, Conviso's motion will be granted.

## I. Background

### A. Factual History

The facts in this section are taken from Plaintiff CM-Focus LLC's ("CM-Focus") amended complaint and supporting exhibits and are accepted as true when resolving the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

In May 2016, Uday Malhan—Conviso's President—contacted Girish Balakrishnan—CM-Focus' CEO—concerning potential work for the federal government. (Am. Compl. ¶ 6 (Dkt. 17).) Conviso struggled to grow, so Malhan requested Balakrishnan's help with breaking

into the federal government's consulting market. (*Id.*) In particular, Malhan sought help from CM-Focus due to its expertise in both Salesforce and Servicenow software. (*Id.*)

Later in 2016, the two reached an oral agreement as to how their companies could work together to obtain consulting contracts from various federal agencies. (*Id.* ¶ 7.) Balakrishnan (and CM-Focus) agreed to assist Malhan (and Conviso) in the "acquisition and performance of federal consulting contracts" through "setting up meetings, delivering pitches to prime contractors and federal agencies, finding staff to work on federal projects, [and] providing Salesforce and other software expertise."[1] (*Id.*) In return, Malhan promised Balakrishnan (i) an equity interest in Conviso, in the event of a sale or transfer of the company or its assets, of 50% of the value of the sale or transfer "attributable to Conviso's involvement in Salesforce/Servicenow as determined by a percentage of revenue associated with those software systems," (ii) a 50% share of any future profits Conviso would obtain on federal-related contracts that were acquired or performed with the help of CM-Focus, or its resources, work, or processes, and (iii) compensation for hourly worked performed by Balakrishnan in helping Conviso perform its obligations under any federal contracts. (*Id.*) The parties each agreed to these terms orally, intending the agreement to become immediately binding. (*Id.*) And they expected that they would likely put all the terms in writing at a later date. (*Id.*)

The first work under the oral agreement began on May 28, 2017, when Malhan requested Balakrishnan fly to Washington, D.C. to create and pitch a presentation to the

---

[1] The amended complaint explains that this lawsuit is between two corporate entities—CM-Focus LLC and Conviso, Inc. However, much of the amended complaint imputes actions to individual leaders of the respective entities—Malhan and Balakrishnan—and not the entities themselves. Nevertheless, the parties appear to agree that the actions of these individuals constitute the actions of the entity for purposes of the motion. The court will do the same and will refer to Malhan interchangeably with Conviso and Balakrishnan interchangeably with CM-Focus.

- 2 -

Centers for Medicare & Medicaid Services ("CMS").  (*Id.* ¶ 8.)  The two worked together on the presentation and then delivered it to CMS personnel at the CMS office.  (*Id.*)  Following the presentation, Malhan created a Conviso email address for Balakrishnan for use while following up with CMS.  (*Id.* ¶ 9.)  However, the pair did not receive any work from CMS from that pitch.  (*Id.*)

On June 20, 2017, Malhan began using CM-Focus' past work for prestigious clients in presentations as a way to highlight Conviso's capabilities with CM-Focus' assistance.  (*Id.* ¶ 10.)  Malhan verbally reiterated the 50% profit sharing aspect of their 2016 oral agreement.  (*Id.*)  On September 22, 2017, Malhan and Balakrishnan met with representatives of Leidos Holdings, Inc. ("Leidos"), to discuss a potential subcontracting opportunity under Leidos for work performed for the National Heart Lung and Blood Institute ("NHLBI").  (*Id.* ¶ 11.)  Once again, Malhan reiterated the 50% split.  (*Id.*)  After multiple meetings over several days, Balakrishnan showcased the technological expertise of Conviso (with CM-Focus' help).  (*Id.* ¶ 12.)  On October 11, 2017, Leidos awarded the subcontract to Conviso.  (*Id.*)

After sending the subcontract to Balakrishnan, Malhan requested that CM-Focus discount its rate by $60 per hour and leave travel time unbilled to make the subcontract possible under typical federal budget restrictions.  (*Id.* ¶ 13.)  CM-Focus then stopped all work in the private sector and dedicated its resources to finding consultants who could be used in the Leidos project.  (*Id.* ¶ 15.)

By October 17, 2017, the Leidos project for NHLBI was well underway.  (*Id.* ¶ 16.)  Balakrishnan worked onsite at the Leidos offices and led meetings with personnel to keep the projects on track and secure additional work.  (*Id.*)  Balakrishnan was careful to conserve

resources by doing things like driving instead of flying. (*Id.* ¶ 17.) Balakrishnan and CM-Focus exerted immense effort to help the Leidos project succeed. (*Id.* ¶ 18.) In particular, CM-Focus succeeded in obtaining multiple consultants for placement on the initial Leidos project. (*Id.*) Conviso benefited from these placements, obtaining a profit of approximately $136,503.50. (*Id.*) Under their agreement, CM-Focus expected half of that amount—$68,251.75. (*Id.*) When a consultant eventually resigned in December 2017, Malhan shared relevant paystubs with Balakrishnan to be used in calculating the 50% split. (*Id.* ¶ 19.) Balakrishnan used the success on the initial Leidos project to obtain additional work for Conviso from Leidos. (*Id.* ¶ 20.)

At multiple times during their work together, Balakrishnan and Malhan referred to a "lawyer-drafted written agreement" which restated both parties' responsibilities in the oral agreement. (*Id.* ¶ 21.) The document was never signed, but each time it was reviewed, Malhan confirmed that he agreed to all the terms contained within. (*Id.*) On March 26, 2018, the parties reviewed the lawyer-drafted written contract together during a screenshare call. (*Id.*) And on April 27, 2018, Malhan asked Balakrishnan to send the lawyer-drafted written contract to him. (*Id.*) Initially, Malhan regularly paid Balakrishnan for travel and the hourly work he performed. (*Id.* ¶ 22.) But eventually, Malhan stopped paying him. (*Id.*) The total amount unpaid for Balakrishnan's travel and hours worked was $19,869.00. (*Id.*) After failed attempts to have Malhan pay him in November 2018 and January 2019, Balakrishnan sent a demand for payment on April 17, 2019. (*Id.* ¶¶ 23–25.) Balakrishnan attempted further outreach to Malhan over LinkedIn on July 7, 2019, but Malhan dismissed those entreaties and made clear

he was not going to pay the requested amount. (*Id.* ¶ 27.) Conviso continues to obtain government contracts by using resources it obtained from CM-Focus. (*Id.* ¶ 28.)

### B. Procedural History

CM-Focus filed the original complaint, *pro se*, in this lawsuit against Conviso on February 26, 2024. (*See* Dkt. 1.) The complaint alleged that Conviso breached a number of terms of an oral agreement and thus owed CM-Focus damages. (*See id.*) After Conviso filed an initial motion to dismiss, (*see* Dkt. 4.), CM-Focus moved to amend its complaint, this time with the assistance of counsel, (*see* Dkt. 10). The court granted CM-Focus's motion to amend its complaint. (Dkt. 15.)

On December 10, 2024, CM-Focus filed an amended complaint with counsel, replacing its *pro se* complaint. (Am. Compl.) The complaint asserts four causes of action. First, CM-Focus asserts a claim for the breach of a written contract. (*Id.* ¶¶ 29–34.) It claims that Conviso materially breached the lawyer-drafted written contract in July 2019 "by refusing to pay amounts due." (*Id.* ¶ 33.) Second, CM-Focus asserts a claim for the breach of an oral contract, pled in the alternative. (*Id.* ¶¶ 35–39.) It similarly claims that Conviso breached the oral contract in July 2019 by refusing to pay the amounts due. (*Id.* ¶ 38.) Third, CM-Focus asserts a claim for unjust enrichment. (*Id.* ¶¶ 40–43.) It claims that Conviso "knowingly accepted valuable services and sources" from CM-Focus, without providing anything in return. (*Id.* ¶ 41.) Fourth, CM-Focus asserts a claim for fraud/misrepresentation, pled in the alternative. (*Id.* ¶¶ 44–51.) It claims that prior to work being performed, Conviso made false representations to CM-Focus concerning their agreement, and CM-Focus justifiably relied on those representations. (*Id.* ¶¶ 45, 48.)

On January 6, 2025, Conviso filed a motion to dismiss the amended complaint and memorandum in support. (*See* Dkt. 20 [hereinafter "Conviso Mot."]; Def.'s Mem. in Supp. of its Mot. to Dismiss the Am. Compl. (Dkt. 21) [hereinafter "Conviso Mem."].) Conviso asks the court to grant the motion and dismiss the amended complaint with prejudice. (Conviso Mot. at 2.) CM-Focus filed a response opposing the motion, (Pl.'s Opp'n to Mot. to Dismiss Am. Compl. (Dkt. 24) [hereinafter "CM-Focus Opp'n"]), and Conviso replied, (Def.'s Reply Br. in Supp. of its Mot. to Dismiss the Am. Compl. (Dkt. 25).

## II.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Co. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To avoid dismissal, the plaintiff must allege more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" unsupported by "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

"The statute of limitations is an affirmative defense that may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim." *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013). However, because courts typically do not reach the merits of affirmative defenses at the motion-to-dismiss stage, dismissal of a complaint based on statutes of limitations occurs

- 6 -

in "relatively rare circumstances." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Ultimately, for a claim to be dismissed as time-barred on a 12(b)(6) motion, "all facts necessary to show the time bar must clearly appear 'on the face of the complaint.'" *Dickinson v. Univ. of N.C.*, 91 F. Supp. 3d 755, 763 (M.D.N.C. 2015) (quoting *Goodman*, 494 F.3d at 464).

When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In addition to the facts alleged in the complaint, the court may examine documents attached to the complaint as exhibits or those explicitly incorporated into the complaint by reference. Fed. R. Civ. P. 10(c); *see Goines*, 822 F.3d at 166.

## II.    Analysis

Conviso moves to dismiss each count in the amended complaint for the same two reasons. First, Conviso argues that CM-Focus fails to allege facts sufficient to support any of its four claims. (Conviso Mot. at 1–2; *see* Conviso Mem. at 9.) Second, Conviso argues that CM-Focus' asserted claims are "barred by Virginia's statute of limitations." (Conviso Mot. at 2; *see* Conviso Mem. at 9.)

### A.    Count I (Written Contract)

CM-Focus first alleges a breach of written contract. (Am. Compl. ¶¶ 29–34.) It alleges that "Conviso materially breached this contract in July of 2019 by refusing to pay amounts due." (*Id.* ¶ 33.) Specifically, it alleges a single breach on July 7, 2019, after "Balakrishnan reached out to Malhan on LinkedIn and Malhan's dismissive responses in that LinkedIn

conversation made clear that Malhan had no intention of ever paying any of the amounts due." (*Id.* ¶ 27.)

1. Statute of Limitations

At the outset, the parties disagree over what statute of limitations applies to the written contract. CM-Focus asserts that the five-year statute of limitations from Virginia Code Section 8.01-246(2) applies, (CM-Focus Opp'n at 8–10), while Conviso contends that the three-year statute of limitations found in Section 8.01-246(4) governs. (Conviso Mem. at 14–16).

Those two sections currently provide limitations periods

> 2. In actions on any contract that is not otherwise specified and that is in writing and signed by the party to be charged thereby, or by his agent, within five years whether such writing be under seal or not;
>
> 4. In actions upon (i) any contract that is not otherwise specified and that is in writing and not signed by the party to be charged, or by his agent, or (ii) any unwritten contract, express or implied, within three years.

Va. Code Ann. §§ 8.01-246(2) & (4).

Accordingly, an *unsigned* written contract is subject to a three-year limitations period, while a *signed* written contract (by at least the party against whom breach is alleged) is subject to a five-year limitations period. *Makina v. Kimya Endustrisi*, No. 3:20-CV-00072, 2023 WL 2065673, at *10 n.10 (W.D. Va. Feb. 17, 2023); *see Herren Farms, LLC v. Martin*, 615 F. Supp. 3d 429, 432 (W.D. Va. 2022) (noting that "Paragraph 4 of [Section 8.01-246] provides for a 3-year period for *unsigned* contracts" while "Paragraph 2 provides for a five-year term for *signed* contracts").

But such a clear distinction between a *signed* written contract and an *unsigned* written contract did not always exist under Virginia law. While neither party raises the issue, the General Assembly amended Section 8.01-246(4) in 2019 to clarify the statute of limitations applicable to written but unsigned contracts. Prior to July 1, 2019, the statute of limitations for those two sections provided only that:

> 2. In actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent, within five years whether such writing be under seal or not;
>
> 4. In actions upon any unwritten contract, express or implied, within three years.

Va. Code Ann. § 8.01-246 (1977).

So, before July 1, 2019, Virginia's statute of limitations did not appear to provide a clear application to written but unsigned contracts. The 2019 amendment providing for a three-year statute of limitations period for a "contract that is not otherwise specified and that is in writing and not signed by the party to be charged, or by his agent" addresses that gap. *See* Christopher S. Dadak, *Civil Practice and Procedure*, 54 U. Rich. L. Rev. 7, 27 (2019) ("This eliminates ambiguity for contracts that did not fall in the written and signed contract provisions under subsection (2) and the 'unwritten contract, express or implied' provision under subsection (4).").

Interestingly, CM-Focus alleges only one breach of the written contract under Count I, occurring on July 7, 2019, (Am. Compl. ¶¶ 27, 33), a week after the amended version of Section 8.01-246 went into effect. The court looks to the statute of limitations in effect when CM-Focus' cause of action arose. *See* Va. Code § 8.01-230 (explaining that "in every action

for which a limitation period *is prescribed*, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the *date the injury* is sustained in the case of injury to the person or damage to property" (emphasis added)); *Doe v. Green*, 904 S.E.2d 307, 313 (Va. App. 2024) (applying the statute of limitations in effect when plaintiff's claim accrued despite later amendments). And CM-Focus' claim began to accrue "when the breach of contract occur[red]," Va. Code Ann. § 8.01-230, on July 7, 2019. Accordingly, the court looks to the version of Section 8.01-246 that was in effect as of July 7, 2019—the current version of Paragraphs 2 and 4 described above.

While CM-Focus alleges in its amended complaint that the lawyer-drafted written agreement "was never signed," (Am. Compl. ¶ 21), it contends that "the contract must still be treated as a written contract for the purposes of Va. Code Ann. § 8.01-246(2)." (CM-Focus Opp'n at 4.) CM-Focus relies on three Virginia cases to support the proposition that an unsigned agreement can constitute a "written contract" under § 8.01-246(2). (*Id.* at 9). But all CM-Focus' citations involve the pre-2019 version of the statute. *See Gerald T. Dixon, Jr., L.L.C. v. Hassell & Folkes, P.C.*, 723 S.E.2d 383 (2012); *M&C Hauling & Constr., Inc. v. Hale*, 99 Va. Cir. 276 (2018); *Dogwood Valley Citizen's Ass'n v. Miller*, 99 Va. Cir. 479 (2018). Those cases do not address the updated statutory language that explicitly provides a three-year limitations period for "any contract that is not otherwise specified and that is in writing and not signed by the party to be charged, or by his agent." Va. Code. Ann. § 8.01-246(4). Thus, its reliance on these cases is misplaced.

Because the written contract was not signed, CM-Focus was required to assert its claim within three years of July 7, 2019—by July 7, 2022—at the latest. Accordingly, its breach of

- 10 -

written contract claim will be dismissed with prejudice.[2] *See Boddie v. Crowe*, No. 7:12CV00525, 2013 WL 5672114, at *1 (W.D. Va. Oct. 17, 2013).

### B.   Count II (Oral Contract)

CM-Focus next alleges a breach of oral contract. (Am. Compl. ¶¶ 35–39.) Similar to Count I, it alleges that "Conviso materially breached this contract in July of 2019 by refusing to pay amounts due." (*Id.* ¶ 38.) Specifically, it alleges a single breach on July 7, 2019, after "Balakrishnan reached out to Malhan on LinkedIn and Malhan's dismissive responses in that LinkedIn conversation made clear that Malhan had no intention of ever paying any of the amounts due." (*Id.* ¶ 27.)

#### 1.   Statute of Limitations

While the parties disagreed over the applicable statute of limitations for the written contract, they appear to agree on the statue of limitations period for the oral contract. Both CM-Focus and Conviso assert that the limitations period provided by Virginia Code Section 8.01-246(4) applies. (*See* Conviso Mem. at 14; CM-Focus Opp'n at 10.) As detailed above, that statute provides that for "any unwritten contract, express or implied," actions must be brought "within three years." Va. Code Ann. § 8.01-246(4).

In their memoranda, the parties debate when various breaches of the oral contract occurred.[3] (*See* Conviso Mem. at 15-16; CM-Focus Opp'n at 10–11.) For purposes of analyzing the statute of limitations, the court will assume the *last* day listed in the complaint,

---

[2] The court does not analyze Conviso's alternative argument that the complaint's allegation of breach of written contract in Count I failed to state a claim upon which relief could be granted.
[3] Earlier potential breaches of the oral contract, including those that occurred before Section 8.01-246 was amended on July 1, 2019, are still subject to the three-year statute of limitations period. That is because language providing for a three-year period for "unwritten contract[s], express or implied," remained unaltered by the General Assembly in 2019.

July 7, 2019, constitutes the latest breach. (Am. Compl. ¶¶ 27, 38.) Additionally, this date corresponds to the *only* date CM-Focus includes under Count II in describing breach of the oral contract. (*See id.* ¶ 38.) Thus, the court utilizes July 7, 2019 as the most conservative potential date of breach.

CM-Focus was required to assert its claim within three years of July 7, 2019—by July 7, 2022—at the latest. Accordingly, its breach of oral contract claim will also be dismissed with prejudice.[4] *See Boddie*, 2013 WL 5672114, at *1.

### C. Count III (Unjust Enrichment)

Next, CM-Focus alleges a claim for unjust enrichment. (Am. Compl. ¶¶ 40–43.) CM-Focus asserts that Conviso "knowingly accepted valuable services and resources from [CM-Focus] without providing [it] value in return." (*Id.* ¶ 41.) CM-Focus submits that "[i]t is unjust under the circumstances for [Conviso] to retain these benefits without payment to [CM-Focus]." (*Id.* ¶ 43.)

#### 1. Laches

Conviso argues that the doctrine of laches bars CM-Focus's unjust enrichment claim. (Conviso Mem. at 17.) It claims that because the "unjust enrichment claim[] rests on recovery of the same 'valuable services and resources' that form the basis" of Counts I and II, it is likewise barred by Virginia's three-year statute of limitations. (*Id.*) That is so because "a laches period of three years bars equity claims when the three-year statute of limitations bars unsigned and unwritten contracts for the same demanded relief." (*Id.*)

---

[4] The court does not analyze Conviso's alternative argument that the complaint's allegation of breach of oral contract in Count II failed to state a claim upon which relief could be granted.

- 12 -

CM-Focus resists. It asserts a five-year limitations period should be used to analyze its unjust enrichment claim based on Virginia Code § 8.01-246(2). (CM-Focus Opp'n at 11.) CM-Focus comes to that conclusion because its "unjust enrichment claim rests on the recovery of the breach of contract claims found in Counts I and II," which it asserts fall into the five-year bucket. (*Id.*) But as explained above, CM-Focus' assertion of a five-year statute of limitations fails.

That is because with "respect to the statute of limitations[,] equity follows the law; and if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity." *Belcher v. Kirkwood*, 383 S.E.2d 729, 731 (Va. 1989) (internal quotation marks omitted). As explained above, both the written but unsigned contract and the oral contract are subject to the three-year limitations period found in Virginia Code § 8.01-246(4). Accordingly, a three-year limitations period applies to CM-Focus' unjust enrichment claim. *See RMS Tech., Inc. v. TDY Indus., Inc.*, 64 F. App'x 853, 858 (4th Cir. 2003).

The statute of limitations for an unjust enrichment claim begins to run at the time the unjust enrichment occurred, not when a party knew or should have known of the unjust enrichment. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp.2d 565, 576 (E.D. Va. 2004). Here, CM-Focus' complaint offers very little in its description of Count III. (*See* Am. Compl. ¶¶ 40–43.) For purposes of this analysis, the court uses the *latest* possible date mentioned in the amended complaint, July 7, 2019, as the most generous date on which the unjust enrichment allegedly occurred. CM-Focus therefore was required to bring its unjust enrichment claim by July 7, 2022. Because CM-Focus filed its original complaint in 2024, more than three years after July 7, 2019, the court finds that the statute of limitations precludes

CM-Focus' unjust enrichment claim on the facts as CM-Focus pleads them. CM-Focus' unjust enrichment claim will be dismissed with prejudice. *See E.W., LLC v. Rahman*, 873 F. Supp. 2d 721, 731; *Boddie*, 2013 WL 5672114, at *1.[5]

### D. Count IV (Fraud)

Finally, CM-Focus alleges a "fraud/misrepresentation (plead in the alternative)". (Am. Compl. ¶¶ 44–51.) CM-Focus alleges that Conviso "made false representations of material fact" which were "intended to induce [CM-Focus] to rely" on. (*Id.* ¶¶ 45, 47.) CM-Focus claims it justifiably relied on those misrepresentations "by dedicating significant efforts to the acquisition and performance of federal-related contracts." (*Id.* ¶ 48.)

#### 1. Statute of Limitations

Conviso argues that Virginia's two-year statute of limitations for fraud bars Count IV. (Conviso Mem. at 16.) Conviso argues that the fraud alleged in the amended complaint began, at the latest, in July 2019, and thus any claim must have been filed by July 2021. (*Id.* at 16–17.) CM-Focus, for its part, does not contest this argument in its response.

Conviso's argument is persuasive. "Under Virginia law, 'every action for damages resulting from fraud shall be brought within two years after the cause of action accrues.'" *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 96 (4th Cir. 2019) (quoting Va. Code Ann. § 8.01-243(A), emphasis omitted). And "[a]n action for fraud accrues at the time the fraud is discovered, or when, by the exercise of due diligence, it ought to have been discovered." *Gilmore v. Basic Indus., Inc.*, 357 S.E.2d 514, 516 (Va. 1987) (citing Va. Code § 8.01-249(1)).

---

[5] The court does not analyze Conviso's alternative argument that the complaint's allegation of unjust enrichment in Count III failed to state a claim upon which relief could be granted.

The amended complaint alleges that after Balakrishnan received "dismissive responses" from Malhan over LinkedIn on July 7, 2019, that it was "made clear that Malhan had no intention of ever paying any of the amounts due." (Am. Compl. ¶ 27.)  CM-Focus's complaint asserts, and this court accepts as true that CM-Focus "discovered" the fraud, at the latest, in July 2019.  CM-Focus was required to assert this claim by July 2021 at the latest.  Accordingly, the court will dismiss its fraud claim with prejudice.[6]  *See Stone v. HVM, LLC*, No. 3:12CV403-JAG, 2012 WL 13034228, at *3 (E.D. Va. June 29, 2012).

## IV.  Conclusion

For the foregoing reasons, Conviso's motion to dismiss (Dkt. 20) will be **GRANTED** and Counts I through IV will be **DISMISSED with prejudice**.

An appropriate Order shall accompany this Memorandum Opinion.

**ENTERED** this 5th day of June 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

---

[6] The court does not analyze Conviso's alternative argument that the complaint's allegation of fraud in Count IV failed to state a claim upon which relief could be granted.